THE BURLINGTON & MISSOURI RIVER RAILROAD IN NEBRASKA, APPELLANT, V. CLAY COUNTY AND ANOTHER, APPELLEES.

1. **Taxes for court house and jail.** The county commissioners have no authority to submit to the electors of the county, the question of voting taxes in excess of the limit fixed by law, for the purpose of erecting a court house and jail; and a tax levied under such a proposition is illegal and may be enjoined.

2. ————: SINKING FUND. A sinking fund tax, levied to pay other than the bonded indebtedness of a county, may be enjoined. And the fact that the county commissioners, after the levy of the tax, formally rescinded the same, will not defeat the action, where the tax is an apparent lien upon real property.

Appeal from Clay county. Tried below before WEAVER, J.

*Marquett, Deweese & Hall,* for appellant.

*Brown & Ryan,* for appellees.

BY THE COURT.

In January, 1879, the county commissioners of Clay county submitted to the electors of that county the following proposition: "Shall the county commissioners of Clay county, Nebraska, have authority to levy a tax of three mills on each dollar of the assessed valuation of said county of Clay, each year, to-wit: The year 1879 and 1880, for the purpose of creating a court house and jail fund, to be expended in building a court house and jail

for said county?" The proposition was adopted by 1339 votes in favor of the same to 573 against, and was declared carried. In pursuance of the adoption of such proposition, the county commissioners of that county, in the year 1879, levied three mills on the dollar on the assessed valuation, and also a levy of five-eighths of a mill for a sinking fund. The plaintiff is a large tax-payer in Clay county, and filed a petition in the district court of that county to enjoin the collection of the above taxes upon the ground that they were illegal. The court found for the defendant, and dismissed the action. The plaintiff appeals to this court.

The principal question presented is, did the adoption of the above proposition by the voters of Clay county authorize the county commissioners to levy the three mill tax in dispute?

Sec. 14 of an act concerning counties and county officers, approved Feb. 27, 1873, which was in force when the proposition was adopted, provided that "the board of county commissioners at any meeting shall have power:

"I. To make all orders respecting the property of the county; to sell the public grounds of the county, and to purchase other grounds in lieu thereof.

"II. To examine and settle all accounts of the receipts and expenditures of the county, and allow all accounts chargeable against the county; and *when so settled*, county warrants may be issued therefor as provided by law.

"III. To purchase sites for and to build and keep in repair county buildings and cause the same to be insured in the name of the county treasurer for the benefit of the county; and in case there are no county buildings, to provide suitable rooms for county purposes.

"IV. Apportion and order the levying of taxes as provided by law, and to borrow upon the credit of the county a sum sufficient for the erection of county buildings, or to meet the current expenses of the county in case of a deficit in the county revenue." Gen. Stat., 234.

Sec. 15 provides that the county commissioners shall not have power to borrow money without submitting that question to the electors of the county; and section 16 authorizes them to submit such question at any regular or special election.

Sec. 18 provides that " the whole question including the sum desired to be raised, or the amount of the tax desired to be levied, or the rate per annum, and the whole regulation, including the time of its taking effect or having operation * * is to be published for four weeks preceding the election, in some newspaper published in the county."

Sec. 19 provides that: " When the question submitted involves the borrowing and expenditure of money, the proposition of the question must be accompanied by a provision, to levy a tax for the payment thereof and no vote adopting the question proposed shall be valid, unless it likewise adopt the amount of tax to be levied to meet the liability incurred."

It will be seen that the authority conferred upon the county commissioners when funds are needed to aid in the construction of county buildings, is to borrow money for a specific purpose upon the credit of the county. This purpose must be submitted to the electors of the county, and be adopted by them. The whole question—that is the amount of the debt, the character of the obligations to be issued, the time and place of payment, and the rate of interest, together with the adoption of a provision for taxation for the payment of the same—must be submitted. While such a proposition is pending, every tax-payer may oppose or uphold it. And even if it is declared carried, such tax-payers may prevent the issue of such obligations by invoking the aid of the courts if the proposition was not legally carried, or any equitable grounds exist against issuing such securities. In this way the necessities of the county for funds can be supplied, and the rights of the tax-payers protected, as funds not required

26

for a specific purpose cannot be borrowed.   It is not the policy of the law to authorize the levy and collection of taxes not necessary to meet the indebtedness of the county, which is already incurred or to be incurred during the year for which the taxes were levied; that is, it is not the intention that more revenue should be raised than is necessary to pay the actual indebtedness of the county.   To guard the tax-payers, the legislature has imposed limitations upon the amount to be levied.   If the sum that can thus be raised is not sufficient to pay past indebtedness, to meet the current expenses of the county, or for an extraordinary occasion, the only remedy is to borrow money. There is no authority for the county commissioners to submit to the voters the question whether they shall levy taxes in excess of the limit fixed by statute, and such a system is open to gross abuse, as there could be no certain limit to. the amount to be raised, as it must depend upon uncertain aggregate valuations for each year; besides they have no authority to draw warrants, except upon duly verified vouchers that have been allowed.   Warrants are not commercial paper, and are open to the same defense in the hands of an indorsee that they would be as against the payee.   *School District v. Stough*, 6 Neb., 357.

There being no authority to levy the tax in question, the judgment of the court below is reversed, the case reinstated, and the injunction made perpetual.

As to the sinking fund tax, the case clearly falls within that of the *U. P. R. R. v. Buffalo Co.*, 9 Neb., 448, and the *U. P. R. R. v. Dawson Co.*, 12 Id., 254; and the tax is clearly illegal and the same should be enjoined.   The county commissioners attempted after the levy of the tax to rescind the same, but their authority to make such rescission is doubtful; and a party has a right to have an apparent cloud on his title removed.   Judgment will be entered in conformity with this opinion.

JUDGMENT ACCORDINGLY.