H. M. POLLARD ET ÁL. v. E. T. HUFF ET AL.

FILED APRIL 30, 1895.   No. 6402.

1. Negotiable Instruments: INDORSEMENTS: GUARANTY.   An agreement in the following form: "For value received we hereby guaranty payment of the within note at maturity, or any time thereafter, waiving protest and notice of non-payment," *held*, not a mere guaranty, but an indorsement with an enlarged liability.

2. ————: ACCOMMODATION NOTE: CONSIDERATION.   An accommodation note or bill, within the meaning of the law merchant, is one which is made or accepted not upon a consideration, but for the purpose of enabling the payee or holder to raise money on credit.

3. ————: EVIDENCE.   Evidence examined, and *held* not to sustain the verdict and judgment in favor of the defendants as makers of the notes in controversy.

ERROR from the district court of Lancaster county. Tried below before STRODE, J.

*Atkinson & Doty*, for plaintiffs in error.

*Davis & Hibner, J. E. Philpott*, and *Field & Holmes*, contra.

POST, J.

This is an error proceeding from the district court of Lancaster county.    It appears from the transcript filed with the petition in error that two actions were commenced in the court below by the plaintiffs in error as assignees of D. W. Haydock, insolvent, to recover from the defendants therein, who are also defendants in error, on three promissory notes, bearing date of August 24, 1891, each for $1,407.78, due in three, six, and nine months, and bearing interest at the rate of eight per cent per annum from date. Said causes were by order of the court consolidated for trial, and will, for the purpose of this proceeding, be treated as one action.    The transactions out of which the controversy arose are exceedingly complicated, and have required repeated examinations of a voluminous transcript, and also of a bill of exceptions so inartistically prepared as to impose upon this court much additional labor.    The undisputed facts as disclosed by the pleadings and proofs, may be summarized as follows:

1.  In the year 1890 the Lawrence Implement Company, a Nebraska corporation, whose place of business was in the city of Lincoln, was indebted to D. W. Haydock, of St. Louis, Missouri, for merchandise in the sum of $5,263.

2.  September 24, of that year, said corporation, by its president, F. P. Lawrence, one of the defendants, executed in favor of E. S. Hawley, also a defendant, its promissory note for $2,500, payable January 1 after date, with interest at ten per cent, the consideration therefor being the corporate indebtedness aforesaid to Haydock.    At the same time said note was indorsed by the defendants as follows:

"For value received we hereby guaranty payment of the within note at maturity, or at any time thereafter, waiving protest and notice of non-payment.

"F. P. LAWRENCE.
"E. T. HUFF.
"E. S. HAWLEY."

3. December 15, following, said company executed its note to the said D. W. Haydock for the sum of $2,622.60, due May 3, 1891, with interest at eight per cent, which note was at the same time indorsed by the defendant as follows:

"For value received I hereby guaranty the payment of the within note and any renewal of the same, and hereby waive protest and notice of non-payment and suit against the maker, and consent that the payment of this note may be extended from time to time without affecting my liability thereon.        FRANK P. LAWRENCE.
"E. T. HUFF.
"E. S. HAWLEY."

4. March 3, 1891, said implement company executed its note in favor of said Haydock for $4,500, due one day after date, and on the 9th day of the same month it executed a note in favor of the same payee for $763.61, due one day after date, without consideration other than the indebtedness above mentioned.

5. March 9, 1891, suit was brought on the note of $4,500, aided by attachment, and on March 11 the implement company, by its president, F. P. Lawrence, answered, admitting all the allegations of the petition, and authorizing judgment against it for the amount claimed, which was rendered accordingly, accompanied by an order for the sale of the property seized under and by virtue of the order of attachment. Judgment was subsequently recovered on the note for $763.71, although nothing has been realized on either, and both judgments, as well as the original indebtedness, are wholly unsatisfied.

6. March 12, 1891, action was brought by Haydock, as holder, against these defendants on the note of $2,500, dated September 24, 1890, and an order of attachment procured against Hawley and Huff, on an affidavit charging that they were about to convert their property into money with intent to defraud their creditors, and had assigned, removed, and disposed of their property with like fraudulent intent, and on May 14, following, suit was brought by Haydock on the note of $2,622.60, dated December 15, 1890.

7. April 24, 1891, the attachment last mentioned having been discharged as to Huff on the ground that the statements of the affidavit therefor were untrue, the latter commenced an action against Haydock on the bond given to secure said order.

8. August 24, 1891, the three actions then pending were settled and subsequently dismissed, the order of dismissal in each case being based upon a written stipulation, substantially in the following form, varying only with the titles of the several causes, and the signatures of the parties:

"Daniel W. Haydock
                v.
Frank P. Lawrence, E. S.
   Hawley, and E. T. Huff.

" It is understood and agreed that the assignees of Daniel W. Haydock, being H. M. Pollard and John M. Camp, shall, and do, hereby dismiss the above entitled suit and pay the costs of the same for certain valuable considerations."

The considerations, to which reference is therein made, were first, the allowance by the plaintiffs of a credit in the sum of $1,260, as damage in the suit by Huff on the attachment bond given by Haydock; second, the execution by defendants of the three notes in suit, which represent the amount of Haydock's claim on the prior notes, less the credit thus allowed.

9. On and prior to March 3, 1891, said Haydock and the several defendants were stockholders of, and desirous of promoting the success of, the Lawrence Implement Company, and the notes of September 24 and December 15, 1891, were executed by said defendant as sureties for the accommodation of said corporation.

In addition to the foregoing facts, it is alleged by the defendants that the consideration for the $4,500 note executed by the implement company March 3, 1891, was the express promise and agreement of Haydock, the payee thereof, to surrender the two notes last described. Their contention with respect to the notes in suit will be understood from the following quotation from the separate answer of Huff, which does not differ essentially from the other answers: "That on the said 24th day of August, 1891, this defendant, then not knowing that the said two notes in this answer described were the same notes which the said D. W. Haydock had so promised to return, and for the payment of which he had so taken the note for $4,500, and upon which last note the said D. W. Haydock had taken judgment, the defendant then and there paid to the plaintiffs on the said two notes sued upon the sum of $1,260, and in the further settlement of the said two cases, then and there believing that said two notes sued upon in the said two suits was other and different indebtedness, and founded on other considerations than hereinbefore set forth, under and by reason of the statement of fact herein stated, did execute and deliver the said note sued on in this action." In a second defense of each answer it is alleged that the defendant, on the 24th day of August, 1891, believing himself liable as guarantor upon the notes therein sued on, paid to plaintiffs the sum of $1,260 in partial satisfaction of said notes. And each prays for judgment in the amount so paid. The $1,260 therein mentioned is, it should be remarked, conceded to be the amount allowed by plaintiffs in settlement and satisfaction of the suit by Huff

on Haydock's attachment bond.   These allegations are all denied by plaintiffs, who contend that the note of March 3, 1891, was executed at the suggestion of Lawrence, and that the attachment suit thereon, which immediately followed, was brought at the request of the latter for the protection of these defendants as against other creditors of the implement company, which was then insolvent.

From this analysis it is evident that the entire controversy must turn upon the construction to be given the transaction of August 24, to which that of March 3 is merely an incident, and important only in so far as it tends to characterize the former.   From a more careful scrutiny of the defendants' position regarding the occurrence of March 3 their contention may be thus stated: Haydock, who in September and December, 1890, was unwilling to accept the notes of the implement company without security, in March, 1891, at a time when said corporation was hopelessly insolvent, agreed to exchange its secured notes, aggregating $5,122.60, exclusive of interest, for its unsecured obligations.   Viewed in the light of the evidence, such a claim appears, to say the least, altogether unreasonable.   In the first place the secured notes were not surrendered, but, on the other hand, suit was brought thereon a few days later; second, although the files and records of those cases were introduced in evidence, we cannot discover that such a defense had ever been interposed by either of the parties, at or prior to the date of the settlement, to-wit, August 24. It is possible that the judgment in this case, if resting upon the finding with respect to that issue alone, might be sustained, but when we take into consideration the transactions on the last named day as disclosed by the undisputed evidence, we are unable to perceive for it any foundation whatever.   Aside from the documentary evidence above set out, the proofs with respect to the settlement in question is confined to the testimony of Mr. Philpott, who appeared as counsel for Hawley and Huff in the actions then

pending, and who represents the last named defendant in this proceeding, and of Mr. Doty, attorney for the plaintiffs herein. The first named witness, referring to the settlement, testified in chief for the defendants:

I proposed to Mr. Pollard [one of the plaintiffs], or Mr. Pollard proposed to me, an adjustment of the two suits that had been begun on the notes, and after talking the matter over part of one day, probably the 23d or the 24th, we came to a conclusion on which the two cases were to be dismissed, and Huff was to be allowed $1,260 on the damage suit, and he was to dismiss that. Then I suggested the notes sued on. There were three of them, and the amount of the $2,500 note with interest and the $2,600 note with interest were added up, making a total of about $5,483, and this $1,260 was to be taken from that, leaving about $4,100, and three notes were drawn up, payable in three, six, and nine months after date. I informed Mr. Huff of what I had done, and suggested to him that he should sign them, all the notes being really for the amount of the judgment already taken, and he did so. Mr. Lawrence, I suppose, signed. Mr. Hawley was not in the city. I was informed that he was in Nebraska City, and wrote him recommending him to sign them.

Q. During this time you also represented Hawley?

A. Yes.

Q. Under your advice he gave the note now sued on?

A. Yes; and on the faith of this it was under my and depending on the understanding that there was no indebtedness for anything before. Under that I advised them both to sign.

Neither defendant was examined with respect to the transaction under consideration. We will, however, adopt the foregoing version thereof as the most favorable to their contention. There is, it will be observed, an entire failure of proof tending to sustain the allegation that the notes in suit are the result of a mistake on the part of the defend-

ants, or any of them. It would certainly be discrediting their intelligence to admit that they did not fully comprehend the terms and conditions of the settlement or the precise nature of the obligation they were assuming. They knew that the prior notes had not been surrendered, but that, on the contrary, actions were pending thereon against them, in which Haydock or his assignees were seeking to charge them as indorsers. They knew that the three notes in suit represented the exact amounts claimed in those actions, less the credit agreed upon in favor of Huff, and the claim that they executed said notes in the belief that they were to apply upon other or different indebtedness of the implement company is unworthy of consideration.

Much is said in the charge of the court and in the brief of counsel for defendants about the original notes being accommodation paper. True, they were accommodation notes in one sense, and one only. They were executed by defendants in order to accommodate, or, in other words, as surety for the implement company. An accommodation note or bill within the meaning of the law merchant is one which is made or accepted not upon a consideration, but for the purpose of enabling the payee or holder to raise money on credit. (Randall, Commercial Paper, 472; Byles, Bills, 131.) The liability of the defendants was not that of guarantors merely, but of indorsers, with an enlarged liability. (*Heard v. Dubuque County Bank*, 8 Neb., 10; *Bloom v. Warder*, 13 Neb., 476; *Helmer v. Commercial Bank*, 28 Neb., 474; *Weitz v. Wolfe*, 28 Neb., 500; *Buck v. Davenport Savings Bank*, 29 Neb., 407.) It requires no argument to prove that such a liability is a sufficient consideration for the note of a surety given and accepted as a renewal of the original obligation. The judgment is not merely wrong, but there is an entire failure of proof, for which a verdict should have been directed in favor of the plaintiffs. This conclusion renders unnecessary an examination of the other questions presented.

REVERSED.